

# THE ATTORNEY GENERAL
# OF TEXAS

**AUSTIN, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

October 3, 1949

Hon. C. H. Cavness
State Auditor
Austin, Texas

Opinion No. V-921

Re: Jurisdiction of State
Auditor under S. B.
116 and penalties for
failure of a district to
comply with S. B. 116.

Dear Sir:

You have requested an opinion on several questions arising under the recent Gilmer-Aikin Acts.

Your first question is whether S. B. 116 places all schools and resident scholastics under the jurisdiction and authority of the Foundation School Program Division of the State Auditor's Office. This is a broad question with no fact situation presented. It is difficult to make accurate sweeping answers to that type of question. At least generally speaking, the answer is that the Act places them under that office. Article X of S. B. 116 says:

". . . after the effective date of this Act and until the State Board of Education shall have been elected and the State Commissioner . . . shall have been appointed... the State Auditor shall take over and perform all of the duties herein assigned to the State Commissioner. . . and is hereby authorized to do and perform all acts necessary to put this Act into effect, and to operate and administer the same. . . .

"In carrying out the provisions of this Act . . . all . . . school officials and employees, are hereby directed to furnish

to the State Auditor such reports, records and other information as he may require in carrying out the provisions of this Act." (Emphasis added throughout).

Your second question is whether Boards of School Trustees are liable to penalties under Article XI, Section 2, if they refuse to pay the minimum salaries provided in S. B. 116. This is likewise a hypothetical question with no facts. You do not state that there has been a refusal to comply with S. B. 116. We therefore do not deem it expedient to attempt to lay down any hard and fast pronouncements as to what we think the courts would hold until all the circumstances of an actual situation are presented.

Section 1 of Article IV of S. B. 116 says that:

"Beginning with the school year 1949-1950, the Board of Trustees of each and every school district in the State of Texas shall pay their teachers, both whites and negroes, upon a salary schedule providing a minimum beginning base salary plus increments above the minimum for additional experience in teaching as hereinafter prescribed. The salaries fixed herein shall be regarded as minimum salaries only and each district may supplement such salaries. . . .

"Any law or parts of laws in conflict with Section 1 of Article IV of this Act are hereby repealed."

These salary provisions are plain. They repeal all minimum salary laws in conflict with them. The Legislature undoubtedly intended that these provisions should be complied with in all districts. It pronounced that no financial assistance under the Act should be given any school which failed to pay the minimum

salaries. It further provided any school which failed to pay minimum salaries would lose its affiliation and accreditation. These penalties are stated in the 4th paragraph of Section 1 of Article IV:

> "Provided that payment of at least the minimum salary schedule provided herein shall be a condition precedent: (1) to a school's participation in the Foundation School Fund; and (2) to its name being placed or continued upon the official list of affiliated or accredited schools. . ."

It is presumed that officials of the State will perform their duties under the law. Mexia I.S.D. v. Mexia, 134 Tex. 95, 133 S.W.2d 118 (1939); Stewart v. Moore, 291 S.W. 886 (Tex. Comm. App. 1927); Donna I.S.D. v. Sanders, 57 S.W.2d 857 (Tex. Civ. App. 1933); Meecham, Public Offices and Officers 379; Throop, Public Officers 535; 34 Tex. Jur. 462, Public Officers, Sec. 81; 17 Tex. Jur. 271, Evidence, Civil Cases, Sec. 75.

It will not be presumed that school trustees will deprive their districts of the financial benefits of the State's program and deprive their students of scholastic affiliation and accreditation. We will therefore refrain from passing upon the question of whether any recalcitrant trustees are criminally liable to fines from $100 to $1000 under Section 2 of Article XI if they pay less than the minimum wage. The many circumstances surrounding criminal responsibility are such as could not be accurately anticipated and disposed of in an abstract and summary manner. To say the least, those who fail to obey this law would subject themselves to the possibility of prosecution. In this regard Section 2 of Article XI provides:

> "Any person, including any county superintendent or ex-officio county superintendent, school bus driver, school trustee, or any district superintendent, principal or other administrative personnel, or teacher of a school district, or its treasurer or proper disbursing officer, who violates any of the provisions

of this Act other than those to which Section 1
of Article XI of this Act applies, shall be
guilty of a misdemeanor and shall be fined
not less than One Hundred ($100.00) Dollars
nor more than One Thousand ($1,000.00) Dol-
lars. . . ."

Your fourth question inquires about the penalties
applicable if a local school board fails to make an effort to raise
the local funds to assist in the program. This question also is
too broad for there to be a pin-point answer. There may be many
different facts and circumstances surrounding such failure. For
example, the provisions of Article VI would seem to require a
school district to increase its maintenance tax if necessary to
meet the local charge determined for the district. The Legisla-
ture did not intend that any district should increase its tax rate
over the $1.50 limit fixed in Article 2784e in order to meet the
local charge or assignment determined. It is stated in the fourth
and fifth paragraphs of Section 5 of Article VI that:

"Provided that if the revenue that
would be derived from the legal maximum
local maintenance school tax is less than
the amount that is assigned to a school dis-
trict according to the economic index, and
if such property valuation is valued for
State and county purposes, such lesser
amount shall be the amount assigned to be
raised by such school district.

"Provided further, that if a school
district is unable or for any reason fails to
collect local maintenance school funds
equal to the amount assigned to it as deter-
mined by this Act, such failure will not
make the district ineligible for full State
per capita apportionment and full Founda-
tion School Fund grants, but the amount as
determined by this Act shall be charged
against the district as budgetary receipts
whether such amount is collected or not."

Both Section 3 of Article VII of the Texas Constitution and Article 2784e, V.C.S., authorize the levy and collection of local maintenance taxes only upon a majority vote of the qualified property taxpaying voters of the district. The inclusion in Senate Bill 116 of the above provisions constitutes legislative recognition of such constitutional and statutory limitations. Certainly where the people of a school district vote against a tax increase, the school district trustees would be unable to raise the funds equal to the amount assigned.

The Legislature has required local boards of trustees to extend their efforts to raising local funds to equal the amount to be charged and used by the district in carrying out the purposes of Senate Bill 116. But it cannot force the voters in a school district to vote for a local maintenance tax which will raise that necessary amount. It may be that the Legislature could have guaranteed the establishment and financing of the prescribed minimum program in every school district in Texas by adequate appropriations from State funds of all the money required (over and above State and County Available School Funds to be realized by the Districts) to take care of the total costs of the minimum program prescribed, but it did not do so in Senate Bill 116. The Bill requires all local school districts to raise from local sources forty-five million dollars toward the total cost of the prescribed minimum program. It does not guarantee to each and every district a minimum foundation program. It guarantees only, to the extent of State funds appropriated for such purpose, the availability of a minimum foundation program to each child of school age in Texas. Thus, the full cooperation of the property taxpaying voters of each school district is necessary to effectuate in full the intended purpose and program prescribed in the Act. To the extent that taxpayers of the school districts do provide local funds sufficient to discharge the obligation or charge imposed upon them to be used in the minimum program, we think the boards of trustees thereof are under a duty to make available to their scholastics the minimum program provided in the Act.

As in answering question two, we will pretermit any discussion of criminal liability until some specific situation is presented with all the surrounding circumstances.

Your last two questions deal with the nine-month school term: (1) Is there criminal responsibility for the failure of the school trustees to have a nine-months' school; and (2) what Gilmer-Aikin funds, if any, are available to a district which fails to have a full nine-months' term?

As in the previous questions, we pass for the present the question of criminal liability under Section 2 of Article XI quoted herein on page 3.

However, it was unquestionably and positively the intention of the Legislature that a full nine-months' term be held under the Gilmer-Aikin program. Senate Bill 116 declares at the outset that:

> ". . . It is the purpose of this Act to guarantee to each child of school age in Texas the availability of a minimum Foundation School Program for nine (9) full months of the year. . . ."

An examination of Article IV will reveal that the salary schedules, for the most part, contemplate a minimum of a nine-months' school. Annual salaries, in general, are obtained by multiplying the monthly salaries by nine.

However, there is no provision, as there was with regard to minimum salaries, that participation in the benefits of the program and accreditation is conditioned on a nine-months' school. And it is provided that classroom teachers shall be paid an annual salary of the monthly salary multiplied by nine,

> ". . . provided however that if the length of the school term is less than nine months, the annual salary shall be such base salary and increments multiplied by the number of months in the term."

Hon. C. H. Cavness, Page 7 (V-921)

A similar provision is made as to the salaries
of principals in certain districts.

Although the Legislature provided for circum=
stances wherein school terms are less than nine months and
did not specifically set out the consequences of a failure to
have a nine-months' school, its dominant objective was "to
guarantee to each child. . . the availability of a minimum
Foundation School Program for nine full months of the year."

We interpret the program to be one for a mini-
mum of nine months. Any school district which maintains its
schools for a less period would therefore be entitled only to
a fractional share of the benefits. The fraction would be de-
termined by the number of months the schools were operated.
This is indicated by the provisions of Section 2 of Article V
dealing with transportation aid. The aid to be given is a
stated amount "for nine months transportation per public
school pupil, or a proportionate part thereof if such pupil
is not transported for nine months."

The above are intended to be but general re-
marks. It was the general legislative intent that the public
schools participating in the Gilmer-Aikin program should
have a full nine months' term. Financial aid is made avail-
able to insure such a schedule.

Many problems will doubtless arise, and we,
of course, cannot solve them all at this time. Certainly
school trustees may not discriminate among pupils similar-
ly situated within their district and furnish some seven
months and others nine months of school under the Gilmer-
Aikin program. The equal protection clauses of the Texas
and Federal Constitutions would prohibit that action, and it
would be in violation of the spirit of the Gilmer-Aikin pro-
gram. Those districts which have less than a nine-months'
program will be denied a proportionate part of the financial
assistance made available under the Acts.

## SUMMARY

The Gilmer-Aikin Acts fix the minimum salaries for school teachers and other school employees. Payment of at least that salary is a condition precedent to a school's participation in the Foundation School Fund and to its name being placed or continued on the official list of affiliated or accredited schools. Sec. 1 of Art. IV, S.B. 116, Acts 51st Leg. 1949.

The Gilmer-Aikin Acts contemplate a full nine months' school program. A district operating less than nine months of school is entitled only to a fractional share of the Foundation School Funds.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By          Joe R. Greenhill

Joe R. Greenhill
First Assistant

APPROVED:

Price Daniel

ATTORNEY GENERAL

JRG:erc